60715. MULLINS v. THE STATE.

CARLEY, Judge.

The appellant, Evelyn Lucille Mullins, was indicted and tried for murder. She appeals from her conviction and sentence for involuntary manslaughter in the commission of an unlawful act under Code Ann. § 26-1103 (a).

There was evidence presented at trial from which the jury was authorized to find the following: Appellant's husband and the deceased, who was their son, arrived at appellant's house at approximately 4:30 one Saturday morning. The father and son had spent the majority of the preceding night at a relative's home talking and playing the guitar. Although the extent of the son's intoxication is in conflict, he had consumed three or four beers during the course of the night and he was carrying a cooler containing both beer and whiskey. Upon entering appellant's home, the father and son sat at the kitchen table where ensued an extended conversation concerning, in general, the son's personal problems including his and his wife's drinking habits. During the course of this conversation, the son began to quarrel with his father and to curse, fuss, sling chairs and

strike his father on and about the head. The appellant also testified that the son threatened to strike her. During the alleged beating of the father by the son, the appellant obtained a pistol and held it over her head and ordered the deceased to stop hitting his father. According to appellant's testimony, her son then ceased beating his father and, as appellant brought the pistol down from over head, it discharged. Appellant's son died as the result of the gunshot wound. Appellant further testified that she intended only to scare her son and to make him cease hitting his father, and that she did not intentionally point the pistol at her son.

1. Appellant urges that the trial court erred in refusing to give her written requested charge on involuntary manslaughter in the commission of a lawful act in an unlawful manner, Code § 26-1103 (b). Involuntary manslaughter is the unintentional killing of a human being "by the commission of an unlawful act other than a felony" (Code § 26-1103 (a)) or "by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm" (Code § 26-1103 (b)). A person convicted under subsection (a) of Code § 26-1103 is punished as for a felony whereas a person convicted under subsection (b) is punished as for a misdemeanor.

Because both defenses were raised by the evidence in the instant case, the trial court properly charged on justifiable homicide by virtue of self-defense and on accident. However, under circumstances where, as here, there is an issue of excessive force in the act of self-defense and a denial of the intent to kill, this court has held that a jury would also be authorized to find that the death was caused unintentionally by the commission of a lawful act (self-defense) in an unlawful manner (use of excessive force). *Jackson v. State,* 143 Ga. App. 734 (240 SE2d 180) (1977); *Prince v. State,* 142 Ga. App. 734 (236 SE2d 918) (1977); *Hodge v. State,* 153 Ga. App. 553 (265 SE2d 878) (1980).

The state, relying upon the recent Supreme Court decision of *Crawford v. State,* 245 Ga. 89 (263 SE2d 131) (1980), contends that under the facts of this case a charge on misdemeanor-involuntary manslaughter was not warranted. Recognizing the increasing confusion between the theory of self-defense on the one hand and the elements of involuntary manslaughter on the other, the Supreme Court in *Crawford* sought to delineate the circumstances under which it would not be error to refuse a request to charge misdemeanor-involuntary manslaughter. To this end, the Supreme Court held: ". . . it is not necessary to give a request to charge the law as to involuntary manslaughter, Code § 26-1103 (b), where the defendant asserts that he or she *fired* a gun in self-defense." (Emphasis supplied.) *Crawford,* supra, at 94. In distinguishing

between the use of guns as opposed to the use of other instruments of protection utilized in self-defense, the Supreme Court noted that the deadly force of a gun is known to all persons. In short, *Crawford* stands for the proposition that a defendant who causes the death of another person by the *intentional firing* of a gun, allegedly in self-defense, cannot then claim that the death was unintentional.

After a careful analysis of the cases cited in *Crawford* and the holding enunciated therein, we believe it to be distinguishable from the case at bar. From the evidence adduced at trial in the instant case, a jury would have been authorized to find that appellant raised the pistol over her head and threatened the use thereof in self-defense. When the son ceased hitting the father, appellant began lowering the pistol from over her head and during the course of lowering the pistol, it *accidentally* discharged. Furthermore, appellant testified that she never *intentionally* pointed the gun at the son and that she never had any intent to kill him — only to scare him.

The Supreme Court specifically and expressly excluded circumstances involving the accidental discharge of guns from its holding in *Crawford.* For this reason, we believe this court's decision of *Prince,* supra, rather than the Supreme Court's decision in *Crawford,* is applicable to the facts of this case. Therefore, the issue of involuntary manslaughter in the commission of a lawful act (self-defense) in an unlawful manner (excessive force) having been raised by the evidence and appellant having properly requested a charge thereon, the failure to so charge was error requiring a new trial. *Spradlin v. State,* 151 Ga. App. 585 (260 SE2d 517) (1979); *Hodge v. State,* supra. Compare *Dean v. State,* 245 Ga. 503 (265 SE2d 805) (1980); *Simpson v. State,* 150 Ga. App. 814 (258 SE2d 634) (1979); *Bullock v. State,* 150 Ga. App. 824 (258 SE2d 610) (1979); *Henderson v. State,* 153 Ga. App. 801 (266 SE2d 522) (1980).

2. Appellant contends the trial court erred in sustaining an objection by the state to testimony by one of its own witnesses that he awoke one night in bed and discovered the deceased hugging him. The answer objected to was elicited on cross examination and was not remotely responsive to the question asked; hence, it was objectionable and properly excluded. *Mickle v. Moore,* 188 Ga. 444 (6) (4 SE2d 217) (1939). Moreover, appellant has failed to show any substantial harm as result of the exclusion of this evidence. Thus, even if the exclusion were erroneous, it does not constitute reversible error. *Hall v. State,* 202 Ga. 619, 620 (44 SE2d 234) (1947).

3. On cross examination, the deceased's uncle was questioned with regard to his knowledge of the deceased's violent and turbulent character when drinking. Refusal to allow this line of questioning is

enumerated as error. "The deceased's general reputation or character for violence has been held to be admissible 'only when there has been a prima facie showing (by the defendant) that three elements are present: that the deceased was the assailant; that the deceased assailed defendant; and that defendant was honestly seeking to defend himself.' *Curtis v. State,* 241 Ga. 125, 126 (1) (243 SE2d 859) (1978)." *Milton v. State,* 245 Ga. 20, 22 (262 SE2d 789) (1980). However, "[i]t long has been stated that the general reputation or character of the deceased for violence cannot be established by proof of prior specific acts of violence. [Cits.]" *Milton v. State,* supra.

Assuming, without deciding, that prior testimony was sufficient to make the necessary prima facie showing authorizing evidence of the deceased's violent and turbulent character, the questions posed to this witness related to his opinion of how the deceased acted under specific circumstances (i.e., when drinking). The questions as framed did not attempt to elicit testimony as to the deceased's general reputation for violence or general reputation for a specific type of violence (*Henderson v. State,* 234 Ga. 827 (218 SE2d 612) (1975)) but "was an attempt to adduce evidence as to specific acts to show his violent and turbulent character and was properly excluded." *Black v. State,* 230 Ga. 614 (3) (198 SE2d 314) (1973).

4. Appellant asserts as error the trial court's refusal to allow a witness for the state to testify on cross examination concerning a conversation had with appellant's daughter relating to the identity of the person responsible for hiding the pistol. "The right of cross examination, thorough and sifting, shall belong to every party as to the witnesses called against him . . ." Code § 38-1705. However, "[t]he scope of cross examination lies largely within the discretion of the trial court. It will not be disturbed by this court unless it is shown there has been an abuse of that discretion." *Davis v. State,* 230 Ga. 902, 904 (3) (199 SE2d 779) (1973). There being no clear showing that exclusion of the proffered testimony resulted in substantial prejudice to the appellant, we find no error. *Dill v. State,* 222 Ga. 793 (152 SE2d 741) (1966).

5. Appellant asserts as error the following charge: "When one uses a deadly weapon per se in an *unusual* and natural manner in which such weapon is used to kill, and death results, the law presumes intention to kill." (Emphasis supplied.) The word "unusual" was apparently inadvertently inserted for the word "usual" and the court neglected to state that such presumption could be rebutted.

However, a careful review of the entire charge to the jury reveals that the charge relating to the use of a deadly weapon in a usual and natural manner which causes death was given twice by the trial court. The charge on this issue attacked by appellant was the second

instruction. The first time the charge was given, the word "usual" was used and the court added: "This presumption may be rebutted. I further charge you that a person shall not be presumed to act with criminal intention but the triers of the fact, you the jury, may find such intention upon consideration of the words, conduct, demeanor, and all other circumstances connected with the act for which the accused is being prosecuted."

The first charge is basically identical to that approved in *Skrine v. State,* 244 Ga. 520 (260 SE2d 900) (1979). The charge as a whole created mere permissive and rebuttable presumptions. Accordingly, it was not erroneous. *Bridges v. State,* 246 Ga. 323 (271 SE2d 471) (1980). See also *Lowe v. State,* 146 Ga. App. 529 (246 SE2d 517) (1978).

6. Enumerations of error 11, 12, 13, 14, 15, 16, 17, 18, 19 and 20 all assert as error the failure of the trial court to give certain of appellant's requests to charge. We have reviewed the entire charge as given and, with the exception of the charge on Code Ann. § 26-1103 (b), find it to be full and fair, substantially embodying the areas of law and basic principles contained in appellant's requests. *Cabaret After Dark, Inc. v. State,* 154 Ga. App. 205 (3) (267 SE2d 843) (1980); *Causey v. State,* 154 Ga. App. 76 (8) (267 SE2d 475) (1980). It is not reversible error to fail to charge in the exact language requested when the charge given adequately covers the correct legal principles. *Teal v. State,* 234 Ga. 159 (3) (214 SE2d 888) (1975); *Speight v. State,* 148 Ga. App. 87, 88 (251 SE2d 36) (1978).

7. We have carefully examined the remaining enumerations of error. They are without substantial merit and relate to matters unlikely to recur on retrial and, therefore, are not addressed. *Knowles v. State,* 246 Ga. 378, 386 (271 SE2d 615) (1980).

*Judgment reversed. Quillian, C. J., and Shulman, P. J., concur.*

DECIDED JANUARY 22, 1981.

G. Robert Howard, for appellant.
W. A. Foster III, District Attorney, Jeff Richards, Assistant District Attorney, for appellee.